THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THADDEUS TAYLOR, Defendant-Appellant.
First District (4th Division)    No. 77-384

Opinion filed September 29, 1977.

James Geis and Andrew Berman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County. Following a jury trial, defendant, Thaddeus Taylor, was convicted of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) and sentenced to 75 to 150 years in the penitentiary. Defendant has appealed contending the testimony of Wallace Davis, to whom defendant allegedly confessed, was unworthy of

belief because Davis was a narcotics addict and that the circumstantial evidence introduced by the State did not prove his guilt beyond a reasonable doubt.

On February 17, 1976, the body of the deceased, Arthur Owens, was found in the back yard of premises located at 418 East Oakwood Boulevard in Chicago, where defendant and the deceased lived in the basement. Deceased had a fractured skull and death was caused by cranial cerebral injuries. He also had wounds on the inner arms and on his face.

Chicago Police Investigator George Rotkvich viewed the body at the scene. About 1:45 p.m., he knocked on the door of the basement apartment leading to the back yard. After he threatened to kick the door in, it was opened and defendant appeared holding a rag and a bucket of water. There were drops of blood on the stairs leading to the door of the basement apartment. Inside the apartment there were smudge marks of blood on the wall of the center bedroom and on the floor. On a dressing table in the bedroom was a tire iron. Its handle was wrapped with tape which had blood on it. There was a large hole in the wall, and a rug in a crumpled condition was pushed over toward the wall.

Defendant was advised of his constitutional rights and transported to the police station. There defendant stated that he, deceased and Sadie Perdue had been together the previous evening, and no altercations occurred. Approximately 12:30 a.m., defendant and Sadie Perdue left. Defendant went to a nearby lounge, and when he returned, the front door of the apartment was open and there was blood all over the apartment. Defendant cleaned up the blood but did not call the police because he thought his roommate had a fight with somebody and did not want to involve deceased with the police. Defendant furnished the names of two persons who had recently threatened the deceased.

Officer Rotkvich spoke with them. They admitted disagreements with deceased but denied killing him. Defendant was not charged with an offense until eight days later following a discussion between Wallace Davis and the police.

Wallace Davis testified he had known both the deceased and defendant. In 1959, in Michigan, he was convicted of assault to rob and larceny from a person and had served concurrent penitentiary terms of 2 to 20 and 3 to 10 years. In 1974, he was placed on probation following conviction of criminal trespass to vehicle in Illinois. He had also been arrested on a number of occasions. He had been a heroin addict for 27 years, but in 1972 he stopped using heroin and participated in the Illinois Drug Abuse Program, first as a patient and subsequently as an assistant director at the local clinic. At the time of trial in October 1976, Davis

explained he was not addicted to heroin and was not on medication of any kind.

Davis testified that at 1:30 a.m. on February 17, 1976, he was with his girl friend across the street from 418 East Oakwood Boulevard when he saw defendant carrying a large bundle over his shoulder with both hands. He called out to defendant, who acknowledged his greeting. Five days later, on February 22, 1976, defendant, in his apartment, admitted to Davis that he had killed the deceased and described in detail how he "offed" the deceased by repeatedly hitting him on the head with a pipe. However, when deceased "wouldn't die", defendant took a razor blade and cut his throat and wrists. Defendant also admitted to Davis that the large bundle he was carrying when he met Davis several days before contained the deceased's body. Defendant also mentioned a jacket he had burned because defendant thought the material could carry fingerprints. A partially burned jacket, apparently matching this description, was recovered by the police from a trash barrel in the alley behind defendant's apartment and was introduced into evidence.

Eddie Stewart testified that he lived on the second floor at 418 East Oakwood Boulevard and had previously lived with the deceased in the basement apartment. Between 10:10 and 10:40 p.m. on February 16, 1976, his landlady, who lived on the first floor, awakened him, saying something was going on down in the basement. He accompanied her to her apartment and heard voices he could not recognize and a thumping sound coming from the basement. This went on for 10 to 15 minutes and then there was silence.

Sadie Perdue testified she was the deceased's girl friend. She was in the apartment with the two men on February 16 in the afternoon when they were arguing over pills the deceased claimed defendant had stolen from him. Before leaving, she put a crowbar beside the deceased's bed and showed it to him. She cleaned the house and went to a tavern where she arrived about 9 p.m. When she left, defendant was standing outside the apartment talking to a man she did not know and the door was open. She did not see defendant later that evening, but she returned to the apartment shortly after 2:30 a.m. and found the lights were out and the door was locked. She knocked on the door and the window and called out, but she left when nobody answered.

Thaddeus Taylor, defendant, testified on his own behalf and denied killing his roommate. He testified he left the apartment at the same time as Sadie Perdue, and, that if she left at 9 p.m. on February 16, he must have left at that time. He did not remember the time he told the police he left the apartment, although he conceded he might have told them he left at 12:30 a.m. He then claimed he did not know what time he left because he

had no watch and there was no clock in the apartment. When he arrived home at 3:30 or 4 the following morning, the door was unlocked, the deceased was not present, and there was blood in the apartment. He cleaned the apartment until Officer Rotkvich knocked on his door later that day. Defendant denied that he made any admissions to Wallace Davis, and he did not know of any reason Davis would testify against him.

■■ Defendant contends that the major witness against him was Wallace Davis, a narcotics addict whose testimony was unworthy of belief. The supreme court has said that the fact that a witness is a narcotics addict has an important bearing upon his credibility. (*People v. Perkins* (1962), 26 Ill. 2d 230, 234, 186 N.E.2d 330.) However, that court also stated in *Perkins* that where the testimony of a narcotics addict is corroborated, the problem is essentially one of the credibility of the witnesses. Although the testimony of a narcotics addict must be viewed with caution, it may be sufficient to sustain a conviction if it is credible under the surrounding circumstances. *People v. Norman* (1963), 28 Ill. 2d 77, 82, 190 N.E.2d 819.

In the present case, the testimony of Wallace Davis was corroborated. The marks on the body of the deceased corresponded with the manner in which defendant told Davis he had killed the deceased. The jacket apparently matching the description of the one described by defendant to Davis was retrieved by police from a trash can at the rear of the premises. In addition, Davis testified he was not on medication or taking narcotics at the time of trial and apparently he had not been an addict for several years. The jury was fully informed both of his prior criminal history and of his addiction to narcotics.

■■ The State's evidence tended to show defendant was alone with the deceased sometime between 10:10 and 10:40 p.m. when Eddie Stewart was called downstairs by the landlady and heard voices and thumping sounds coming from the basement apartment. Investigator Rotkvich testified and defendant admitted he did not leave the apartment until 12:30 a.m. It seems improbable that if a stranger had committed the crime, he would have removed the body from the apartment. Moreover, there is no explanation for why the door was locked from the inside and the lights out when Sadie Perdue returned to the apartment at 2:30 a.m. Defendant's testimony that he left the apartment earlier, that when he returned deceased was not present and that he was cleaning the apartment until the police arrived presented only a conflict in the testimony for the jury to resolve. It is the function of the jury to pass upon the question of an accused's guilt and a conviction will not be reversed unless the evidence is so improbable as to justify a reasonable doubt of the accused's guilt. (*People v. McDonald* (1976), 62 Ill. 2d 448, 456, 343

N.E.2d 489; *In re Yates* (1976), 35 Ill. App. 3d 829, 833, 342 N.E.2d 791.) Although, apart from defendant's confession, the proof was entirely circumstantial, the totality of the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. (*People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801.) Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and ROMITI, JJ., concur.