THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALAN RANDALL, Defendant-Appellant.

First District (5th Division)    No. 78-575

Opinion filed May 23, 1980.

James J. Doherty, Public Defender, of Chicago (Kathleen O'Donovan and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Janet Trafelet, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of murder and sentenced to 50 to 100 years. On appeal, he contends that (1) it was error to admit and to allow argument concerning evidence implying that he committed crimes for which he was not on trial; and (2) he was not proved guilty beyond a reasonable doubt.

Police officers Knych and Spearman gave testimony that they were on an evening patrol when they heard several gunshots and then saw two men running diagonally across a street toward an alley; that both men were carrying pistols—one of which was chrome plated; and that the officers left their vehicle and pursued the men. Officer Knych testified also that defendant had a bandaged left hand; that he followed him down an alley and through a gangway underneath a building; that defendant dropped a nine-millimeter Browning automatic pistol in the gangway, which the officer recovered; that defendant boarded a bus, where Knych eventually arrested him; and that when he returned to the scene of the shooting, Knych recovered four expended nine-millimeter cartridge casings. Officer Spearman also testified that he pursued the other man over a fence, into a back yard and through a gangway but was unable to catch him; and that he recovered a chrome-plated revolver in the gangway. Both officers testified that they went to the hospital later that evening and viewed the body of the victim of the shooting; that they recognized him as a man they had stopped and frisked shortly before the shooting; and at that time he had no weapon on his person. On cross-examination, Knych stated that the nine-millimeter pistol which he had recovered could not have been prepared for firing by someone whose left hand was bandaged in the manner of defendant's on the evening of the shooting.

Leonard Despenza, an occurrence witness, testified for the State that on the evening in question, he and a friend named James were in a store where he heard deceased and "Cicero" in a heated argument about some money; that "Cleet" (the store owner), "Skinny" and defendant were also present; that when deceased asked Cicero for his (deceased's) money, Cicero said he would not give him any; that defendant then told Cicero, "You don't have to be talking to these chumps" and pulled a brown-handled automatic pistol from his pocket; that Cicero and defendant left the store; that later the witness, deceased, Skinny, and James were standing on a street corner talking and drinking when a car pulled up from which defendant and Cicero exited; that when defendant displayed a gun, all four of them ran; that he heard shooting and saw the deceased fall but did not see who shot him; that he kept running and heard several more shots; that the nine-millimeter Browning automatic pistol recovered by the police was the same or similar to the gun that defendant displayed at the store; that Cleet and Skinny were dead and, while he believed James and Cicero were alive, he did not know their whereabouts. The witness testified also that he was employed in 1976 with North Cicero Dodge; that he had been working for two years prior to September 1974 for Grand Elm Auto; that he had been arrested about two months prior to this trial for theft, but the charges against him had been dismissed; that

when he was arrested, he lied to the police about his address and used the alias of Ronald Spencer; that he had also used the alias of Spence Lindsey; that the State housed him in a motel, paid him a $10 daily food allowance, and promised to relocate him after the trial; that he told the State he was a little short of cash, and the assistant state's attorney said he would be paid a sum of money, the amount of which would be determined after his testimony; that at the time of the shooting, he had been using heroin—although he was not using this drug at the time of trial; that he did not see a bandage on defendant's hand on the night of the shooting; and that he gave an account of the incident to the police five days after the shooting.

Officer Grazioso testified that he and his partner transported the deceased to the hospital where he inspected the deceased's clothing and found no gun, bullets, or holster.

Dr. Choi, a pathologist for the Cook County medical examiner's office, testified that he found seven entrance wounds and four exit wounds on the body of the deceased; that two of the entry holes were on the back, three were on the left side of the buttock, and two were on the left side; and that three bullets were recovered from the victim's body.

Officer Sandunas, a police firearms examiner, testified that one of the bullets recovered from the deceased's body came from the Browning automatic nine-millimeter gun which Officer Knych had seen defendant drop; that the four discharged cartridge cases recovered at the scene of the shooting were fired from that same weapon; that this Browning pistol can be fired 14 times without reloading; and that once loaded with the hammer pulled back, the gun can be carried indefinitely in a loaded position.

Robert Podolski, secretary-treasurer with North Cicero Dodge, testified for defendant that Leonard Despenza was employed at North Cicero Dodge approximately one month during 1972 and one month during 1973, but was not employed there in 1976. Ralph Brindise, formerly a partner at Grand Elm AMC, testified that Despenza was employed at Grand Elm Automobile Agency from October 1973 to January 1974; and that Despenza was never employed by this agency in September 1974.

A police investigator testified for defendant that five days after the shooting incident, Leonard Despenza gave him a statement concerning that incident; and that Despenza said "the guy in the plaid coat" (later identified as defendant) fired a shot and the deceased doubled over.

Defendant testified on his own behalf that he had been convicted of two robberies and unlawful possession of a weapon; that on the evening of the shooting, he met Ronald Simmons (also known as "Cicero") on Cicero Avenue; that they started walking to Simmons' home to pick up

some old receipts and two paintings when four young men ran up to them and started shouting; that one was the deceased, who argued with Simmons about poor quality "dope"; that he told Simmons to leave and, as they were walking up the street, the boys again surrounded them; that deceased drew a pistol and he then heard "boom, boom, boom" from his right side, where Simmons was standing, and saw deceased double up; that Simmons went up to the victim and snatched something; that as they started to run, Simmons passed him a gun and as he ran down an alley he threw the gun down; and that he eventually boarded a bus, where he was arrested. On cross-examination, defendant testified that when the boys surrounded them the second time, Simmons and the deceased were standing face-to-face when the latter pulled out a gun.

OPINION

Defendant initially contends that he was deprived of a fair trial because of certain testimony and argument concerning evidence which inferred that he had committed crimes for which he was not on trial. We disagree. This contention centers in testimony of a State's witness (Leonard Despenza), who stated on direct examination that Cleet and Skinny, both eyewitnesses to the shooting of the victim, were dead. During cross-examination of this witness, the following colloquy took place:

> "Q. Where were you when Benny, last name unknown, told you that Skinny's, last name unknown, was dead? * * *
>
> THE WITNESS: Well, he told me, 'Look out man because somebody just pulled up and shot Skinny in the mouth. I think you're next.'
> * * *
>
> Q. So you haven't seen your very good friend Benny, last name unknown, for the last year or so is that right?
>
> A. You want to know why?
>
> Q. No I'm just asking you why. Are you going to tell me he's killed too?
>
> A. Sir?
>
> Q. Benny still alive?
>
> A. No. I'm running scared. Scared of my life."

■■ We note that when a party procures or acquiesces in the admission of evidence on cross-examination of a witness and makes no motion that it be stricken and the jury instructed to disregard it, a complaint that the evidence was improper will be rejected on appeal (*People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389, *cert. denied* (1962), 369 U.S. 808, 7 L. Ed. 2d 555, 82 S. Ct. 651; *People v. Strater* (1979), 72 Ill. App. 3d 486,

390 N.E.2d 979; *People v. Thomas* (1979), 72 Ill. App. 3d 186, 389 N.E.2d 1330), and that the State will not be held responsible for such testimony (*People v. Mays* (1979), 74 Ill. App. 3d 145, 392 N.E.2d 106).

In the case at bar, defendant elicited the testimony he now complains of; namely, that the witness said he had been told that Skinny had been shot in the mouth and that he had a fear of being killed. Defendant made no motions with respect to that testimony and, additionally, we note that when the State sought on redirect to question the witness concerning his fears, an objection was sustained and the witness gave no testimony in this regard.

Defendant also contends he was prejudiced by the State's comments in closing argument concerning this testimony. The remarks complained of were in the State's rebuttal argument, as follows:

> "With that lower class aspect, of our society, ladies and gentlemen, one thing that its hard for a person there to get and that is protection from criminals. Very difficult to obtain and its so difficult for a person from that class or that segment of society to come forward as a State witness. Its very difficult because out in a certain section of the City it's not the Chicago Police Department who controls things. Its more the criminal element that controls the streets, and unfortunately, consequently when you have an individual from that background who knows all this, who knows very well that if he comes to the police and tells them what he knows, if he follows through as a State witness against a person especially a person charged with a violent crime such as this gentleman here that you are looking at, its a hard thing for that person in that particular set of circumstances to do what Mr. Despenza did but what he did do.
>
> He didn't go right away to the police. He waited for five days and he must have been mulling this over in his head. He came in voluntarily because he must have known the tremendous pressure that would be put on him and the time it would take for this case to go to trial and the biggest of which would be the absence of protection of the citizen in our City when a person from that segment comes to us and he said 'Mr. Quinlivan, I'm afraid for my life if I testify will you—'
>
> MR. ADAM: Object there is no evidence. The evidence is nothing what the State's Attorney is saying.
>
> THE COURT: The jury will disregard it.
>
> Mr. BOHARIC: When he comes forward and he testified and he is in fear, he testified he's in fear, that was the reason we put him in the motel."

It is well established that a defendant cannot claim that he has been

prejudiced by remarks of the prosecution which have been invited or provoked by defendant's counsel (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608; *People v. Hambrick* (1979), 68 Ill. App. 3d 447, 386 N.E.2d 455), and that the prosecution may draw legitimate inferences from facts in evidence (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114). ■■ Here, before the above comments of the State, defense counsel argued that Despenza was being housed, fed and paid by the State— insinuating that his testimony was "purchased." This argument justified a response and, while defendant suggests that the State's comments "went far beyond fair reply," we note that neither the State's testimony nor its argument connected defendant directly with the deaths of the eyewitnesses; that because Despenza's testimony concerning his fears was in evidence, the State could properly comment on and draw reasonable inferences from it; and that the trial court sustained the only objection made by defendant to certain of the comments and instructed the jury to disregard them. Thus, we see no prejudice to defendant in those comments and, in any event, if there was error it was harmless considering the totality of the evidence.

We now turn to defendant's second and final contention that his guilt was not proved beyond a reasonable doubt. Initially, we note that a court on appeal will not disturb the jury's determination of guilt unless the evidence is so improbable as to raise a reasonable doubt of guilt (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Smith* (1979), 69 Ill. App. 3d 704, 388 N.E.2d 184), and it is the jury's function to determine the credibility of witnesses and the weight to be afforded their testimony (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873; *People v. McTush* (1979), 78 Ill. App. 3d 603, 397 N.E.2d 463). Moreover, the positive and credible testimony of a single occurrence witness is sufficient to support a conviction (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866), notwithstanding contrary evidence by the accused (*People v. Sullivan* (1970), 46 Ill. 2d 399, 263 N.E.2d 38; *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904).

Bearing these principles in mind, we turn to defendant's specific arguments. He first urges that Despenza, the State's sole occurrence witness, was not worthy of belief because his heroin addiction impaired his truthfulness and perceptive abilities, as indicated by his testimony that he did not see who shot the victim but admitted previously telling the police that he saw defendant shoot the deceased; that numerous shots were fired, whereas in an earlier statement to the police he said that he

heard only one shot; that two months before trial, he told police his name was Ronald Spencer and gave them the wrong address; and that he also used the name of Spence Lindsey. Defendant also points to the fact that Despenza's testimony as to places and time of employment was incorrect, and he suggests that the following testimony of Despenza tends to show that his perception may even have been impaired at the time of the shooting: (1) he failed to see the cast covering defendant's arm the day of the murder; (2) he did not see who had driven the automobile defendant left just before the shooting; and (3) he testified that the victim was shot about 35 feet from the corner of Quincy and Cicero Avenues while an officer testified that the victim was lying approximately 200 feet from that intersection.

We note that although the testimony of a narcotics addict must be viewed with close scrutiny, it nevertheless may be sufficient to sustain a conviction if credible under the circumstances (*People v. Norman* (1963), 28 Ill. 2d 77, 190 N.E.2d 819; *People v. Garrett* (1976), 44 Ill. App. 3d 429, 358 N.E.2d 364), and that corroboration of an addict's testimony tends to render it more credible (*People v. Taylor* (1977), 53 Ill. App. 3d 241, 368 N.E.2d 699).

■■ In the instant case, although there are minor inconsistencies in Despenza's testimony, there was corroboration in the testimony of the arresting officers and the medical examiner. The officers heard shots fired, observed defendant running from the scene, and he was apprehended a few blocks away. They also recovered the murder weapon, which one of the officers saw defendant throw away. The medical examiner said the victim had five bullet entrance wounds on his back and side, and two under the arm. Despenza's testimony indicates that he saw defendant pull out the gun just prior to the shooting and that when he and the victim were running away, he heard shots fired and saw the victim fall. The discrepancies pointed to by defendant affect only credibility—which is a determination left to the jury and, under the circumstances here, we cannot agree that Despenza's testimony was unworthy of belief.

Nonetheless, defendant, citing *People v. Grove* (1918), 284 Ill. 429, 120 N.E. 277, maintains that Despenza's testimony does not demonstrate an "absolute conviction of truth," which defendant argues is required where a witness expects to benefit by testifying. We reject this position. In *Grove*, crucial testimony adverse to defendant was given by an accomplice, and the court stated:

"[T]estimony of an *accomplice* is to be received with caution and carefully scrutinized, and is only to be accepted where the jury, after careful examination and consideration, are convinced of its truth. If an *accomplice* gives testimony which tends in any degree

to exonerate himself or to lay the blame of the transaction upon another or it appears that he will be the gainer in any way by his testimony, such facts should have great weight with the jury and trial court, but his testimony may be of such a character as to carry with it an absolute conviction of its truth." (Emphasis added.) (284 Ill. 429, 434-35, 120 N.E. 277, 280.)

In the instant case, there is nothing here to even remotely suggest that Despenza was an accomplice. Moreover, the record does not demonstrate that Despenza expected any benefit at the time of his original statement to the police, which was no less incriminating than his trial testimony. In any event, this question also is one of credibility which we will defer to the conclusion of the jury.

In summary, we believe the trial court's determination of credibility which favored the State's witnesses is supported by the record, and we cannot say that the evidence was so improbable as to leave a reasonable doubt as to defendant's guilt.

Finally, it is defendant's position that no convincing evidence was presented demonstrating that he was capable of shooting the weapon that killed the deceased, since his left hand was in a cast at the time of the shooting. While an officer testified it could not be cocked with one hand, we note that the firearms examiner testified that the weapon could be fired 14 times without reloading and that, after it was loaded and the hammer pulled back, the gun could be carried in that position indefinitely. Thus, the jury could have believed the weapon had been precocked.

In view of the foregoing, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.