THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES INGRAM, Defendant-Appellant.

First District (5th Division)    No. 79-511

Opinion filed December 19, 1980.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Mark X. Van Cura, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a bench trial, defendant was found guilty of aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4) and sentenced to a term of 3 1/3 to 10 years. On appeal, he contends that: (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied due process and his right to present a defense by the exclusion of certain evidence; (3) evidence of a probation revocation was improperly admitted to impeach him; (4) the State's failure to comply with discovery and to perfect impeachment denied him a fair trial; and (5) he was improperly cross-examined about certain statements he had made to a probation officer. We affirm.

On October 17, 1977, Douglas Coley was shot in the stomach at close range by defendant. Coley and defendant disagree concerning the circumstances of the shooting and the events which are the basis of defendant's conviction. The following pertinent evidence was introduced at trial.

Douglas Coley testified that at about 3 a.m. on the night in question he was in bed with his wife when he heard a knock on the door. His wife asked who it was, and Coley recognized the voice as defendant's. Coley went to the door and his wife returned to the bedroom. When defendant told Coley to open the door, he opened it and saw defendant and an unknown person in the hall. Defendant and Coley argued about the late hour of the visit, and defendant demanded money which Coley allegedly

owed him. Coley agreed to pay him and pushed the door closed. As Coley walked to his bedroom to get the money, defendant kicked the door open and pulled a gun from his right pocket. He told Coley that he was going to teach him a lesson and shot him once in the stomach. Defendant then pointed the gun at Coley's head and told him that he was going to kill him. Coley ran to the bathroom and then to the bedroom, where his wife called the police.

Coley testified that he never had a gun and that the gun did not discharge as a result of a struggle with defendant. He further stated that he was not a drug addict but admitted that he used three or four tablets a day at the time of the shooting. He testified that three days before the shooting he had received some tablets from defendant through a girl whom defendant had named as his sister. He also denied telling defendant's brother that for $200 he would leave town.

Coley's wife testified that on the night of the shooting she and her husband had watched television until about 2:30 a.m. when they went to bed. At about 3:15 a.m. she responded to a loud knock at the door. She recognized defendant's voice and he asked whether her husband was home. She told defendant that he was not home, and defendant told her that she had better open the door because he was going to enter. Her husband came to the front door and she moved back to the bedroom door. She faced the front door and saw her husband arguing with defendant about money. Her husband attempted to close the front door but was unsuccessful. She then saw defendant raise a gun and shoot her husband who was unarmed. She closed the bedroom door slightly and called the police.

Mrs. Coley testified that she believed her husband was a drug addict at the time of the shooting. Although she had never seen him take drugs, through her experience of working with addicts, she was able to recognize one by looking at his eyes. She stated that at the time of trial her husband was not an addict.

Chicago police officer Tyler testified that he responded to a call regarding a shooting in Coley's building and that he saw defendant and another man when he arrived. He told defendant to stop, and defendant retreated a few steps and dropped an object into the bushes. Officer Tyler recovered a .22-caliber pistol from the bushes which was introduced at trial. He arrested defendant and then saw Mrs. Coley, who identified defendant as the man who shot her husband.

On cross-examination Officer Tyler testified that he asked defendant who owned the gun. Defense counsel asked whether defendant had replied that it belonged to Coley, and Officer Tyler responded that that was not his reply. Defense counsel then asked, "He didn't say it was his, did he?" to which Officer Tyler replied "Well, yes he did."

On redirect, Officer Tyler testified that at the police station defendant told him that "he [defendant] should have took his chances with me instead of going to court, and that he should have taken me out of the game," although he admitted that this statement was not included in his police report.

Defendant testified in his own behalf. He had previously given Coley some things to sell for him, and Coley told him to come to his house to collect the money. After an unsuccessful collection attempt, some "associates" told him that they had just seen Coley. On October 17 he went to Coley's apartment at about 3 a.m. to collect $360 from him. He was unarmed at that time. When he asked Coley for the money, he replied that he was short because the police had "busted him earlier and threw half my stuff away" and tried to stall him. Defendant told Coley that he was lying since he could see the drugs he had given him being "cooked up" inside the apartment. Coley offered him $25, but defendant demanded the total amount. Coley said he would get the rest from his wife who was in the bedroom. He returned from the bedroom with a small pistol, and the two began to struggle for it. Defendant butted Coley in the forehead, and the gun discharged. Coley fell to the floor and then got up and ran to the bathroom. Defendant was unaware that Coley was wounded and continued to demand his money. Coley ran to his bedroom where he told his wife to get the rest of the money. A man in the hall told defendant that police were coming and defendant ran outside to see police standing there. He testified that he ran from the building because he was aware of the law as it applied to ex-convicts in possession of a pistol, and he became frightened. When he was arrested, he told the police that he had taken the gun from a man upstairs, but the police refused to believe him. Defendant admitted that he had been a cocaine user for four years and that on the day of the shooting he was selling pills called "T's and blues." On cross-examination the State attempted to impeach defendant concerning his drug use with a statement he made to a probation officer in a pretrial investigation report.

Defendant's brother, Ronnie Ingram, testified that he knew Coley only casually prior to the shooting. He had a conversation with Coley in a poolroom after the shooting but could not remember the date. He last saw Coley at his beauty shop on July 1, 1978. The witness attempted to describe the substance of a conversation he had with Coley but the trial court sustained the State's objections to this testimony. The defense made an offer of proof that Coley had told Ronnie Ingram that he would refuse to testify for $200 worth of "T's and blues." The defense rested.

It was stipulated that while at the hospital on October 17, 1977, Coley had told a nurse that he had taken an injection of Talwin Pribenzamine (T's and blues) on the previous day. The trial court took judicial notice of

a certified copy of defendant's prior voluntary manslaughter conviction. The trial court found defendant guilty of aggravated battery and sentenced him to a term of 3 1/3 to 10 years. Defendant appeals.

OPINION

I.

Defendant contends that he was not proved guilty beyond a reasonable doubt since the victim's testimony must be viewed with extreme caution because he was a drug addict. He notes that his version and the victim's version of the incident "vary wildly" and that his version was corroborated in several respects by the testimony of the victim's wife. Defendant contends that absent corroboration, the testimony of a drug addict is insufficient to remove all doubt as to his innocence.

■■ Coley admitted that he was taking drugs at the time of the shooting but denied that he was an addict at the time of trial. His wife acknowledged that she thought that he had been an addict in the past but testified that she did not feel that he was an addict at the time of trial. Assuming that Coley was an addict at the time of trial, that fact would bear heavily on his credibility, but it would not totally destroy it. (*People v. Cepolski* (1979), 79 Ill. App. 3d 230, 238, 398 N.E.2d 351, 356-57; *People v. Gilford* (1974), 17 Ill. App. 3d 131, 133, 308 N.E.2d 55, 57.) Although there is a need for close scrutiny of his testimony (*People v. Galloway* (1974), 59 Ill. 2d 158, 163, 319 N.E.2d 498, 501), it may be sufficient to sustain the conviction if it is credible under the surrounding circumstances (*People v. Norman* (1963), 28 Ill. 2d 77, 82, 190 N.E.2d 819, 822; *People v. Taylor* (1977), 53 Ill. App. 3d 241, 244, 368 N.E.2d 699, 701) or corroborated by other witnesses. *People v. Smith* (1968), 41 Ill. 2d 158, 161, 242 N.E.2d 198, 200, *cert. denied* (1969), 396 U.S. 852, 24 L. Ed. 2d 101, 90 S. Ct. 111; *People v. Luckett* (1977), 48 Ill. App. 3d 536, 546-47, 362 N.E.2d 1297, 1305.

As defendant concedes, the testimony at trial presented two divergent stories. The question of defendant's guilt depended on which witnesses were found to be credible. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

Douglas Coley's testimony was credible under the surrounding circumstances and was corroborated by his wife's and Officer Tyler's testimony. The testimony concerning the late hour of the visit and defendant's flight upon arrival of the police would tend to make Coley's explanation of the events credible and plausible.

Mrs. Coley's testimony corroborated her husband's testimony in that it was defendant who came to the apartment with a gun and was the aggressor. Contrary to defendant's contention that the only evidence that defendant intentionally shot Coley was the victim's testimony since Mrs. Coley did not actually see the shooting, the record is clear that she did see defendant raise the gun and shoot her husband. Her testimony that her husband did not have a gun in the apartment corroborated her husband's testimony and contradicted defendant's testimony that the shooting was accidental and precipitated by Coley's return with a gun. Although Mrs. Coley did describe a struggle between defendant and her husband, the record is clear that the struggle took place when Coley attempted to close the door and not inside the apartment immediately before the shooting.

Officer Tyler's testimony that defendant admitted that the gun belonged to him further showed that defendant was the aggressor. Coley's testimony was credible under the surrounding circumstances and was corroborated by the testimony of Mrs. Coley and Officer Tyler. The trial court found that Coley's testimony as well as that of the other State's witnesses was credible, and our review of the evidence does not show it to be so improbable as to raise a reasonable doubt of defendant's guilt. We therefore find that defendant was proved guilty beyond a reasonable doubt.

## II.

Defendant also contends that he was denied due process and his right to present a defense by the trial court's exclusion of the testimony of Ronnie Ingram that Coley offered to disappear for $200 worth of drugs. The trial court sustained several hearsay objections to Ronnie Ingram's testimony regarding the conversation and the testimony was excluded.

■■ Defendant argues that Coley's statement was not hearsay and was therefore improperly excluded. We agree. " 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.) In this case Ronnie Ingram's testimony was not offered to show that Coley would in fact refuse to testify for $200 worth of drugs but merely to establish that Coley had made such an offer. The evidence was not offered as proof of the facts contained in the statement but to cast doubt on Coley's testimony and was therefore not hearsay. (*People v. Morgan* (1963), 28 Ill. 2d 55, 63, 190 N.E.2d 755, 759.) The excluded testimony directly contradicted Coley's denial on cross-examination of making such a statement and would serve to impeach his credibility. (*Morgan.*) It was therefore error to exclude this testimony.

The State argues that the testimony was properly excluded because it

was irrelevant to the crime itself and cites *Morgan* as support for that position. While in *Morgan* it happened that the impeaching statement contradicted a defense witness' testimony and was related to the charge on trial, we do not interpret *Morgan* as establishing a general rule that before a statement can be admitted for impeachment purposes it must relate to the crime itself. Defendant has a right to confront witnesses against him (*People v. Agee* (1980), 85 Ill. App. 3d 74, 81, 405 N.E.2d 1245, 1251), and the testimony in this case was not so collateral to the issues at hand as to be irrelevant.

■■ The State also contends that no proper foundation was laid for the impeachment testimony. The record reveals that a sufficient foundation for impeachment was laid. Coley was asked about whether he had spoken to Ronnie Ingram after October 17, 1977, in a pool hall on the west side, and then whether he had made the alleged offer. This was an adequate foundation for impeachment. (See *People v. Payton* (1966), 72 Ill. App. 2d 240, 248, 218 N.E.2d 518, 522; *People v. Byers* (1973), 11 Ill. App. 3d 277, 281, 296 N.E.2d 621, 624.) We therefore find that Ronnie Ingram's testimony was admissible and that its exclusion was error.

Although we conclude that the exclusion of Ronnie Ingram's testimony was error, reversal is not required in this case. The testimony did not directly relate to the events of the crime itself so as to negate the evidence of defendant's guilt. The fact that Coley may have been willing to refuse to testify for $200 worth of drugs does not mean that if called to testify he would not do so truthfully. In view of Mrs. Coley's testimony which clearly established defendant's guilt, any additional impeachment of a possible drug addict would be of little probative value. Because it does not appear that justice was denied or that the trial court's judgment may have resulted from the erroneous exclusion of Ronnie Ingram's testimony, we will not reverse defendant's conviction. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 17, 169 N.E.2d 347, 350, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290; *People v. Rea* (1979), 80 Ill. App. 3d 77, 81, 399 N.E.2d 302, 305.) To the extent that the exclusion of testimony may have denied defendant due process by denying him the right to present a defense, we find that in view of all the other evidence of guilt that it was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

### III.

Defendant contends that the trial court erred in allowing the introduction of his 1968 conviction for voluntary manslaughter because: (1) that conviction occurred more than 10 years before trial; (2) proof of a probation violation was substituted for that of a prior conviction; (3) no certified copy of conviction was produced; and (4) there was no proof

that defendant had been released from prison within 10 years of the instant trial.

*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, sets forth the guidelines for the introduction of prior convictions for impeachment purposes. (See *People v. Yost* (1980), 78 Ill. 2d 292, 296-97, 399 N.E.2d 1283, 1284.) *Montgomery* precludes admission of evidence of prior convictions "if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date." 47 Ill. 2d 510, 516.

■■ The report of proceedings shows that the trial court was asked to take judicial notice of a certified copy of the prior conviction and that a copy was tendered to the court. On appeal, the record was supplemented to include that certified copy. In light of this, defendant's claim that no certified copy of conviction was presented must fail. From the copy of conviction it appears that defendant was found guilty of voluntary manslaughter on January 26, 1968. On November 1, 1968, he was sentenced to a term of 3 to 20 years after a violation of probation imposed for that offense. In such a case defendant is not sentenced for his conduct in violating probation but is sentenced for his original offense. *People v. Owens* (1978), 58 Ill. App. 3d 37, 39, 373 N.E.2d 848, 850; *People v. Huff* (1976), 44 Ill. App. 3d 273, 277-78, 357 N.E.2d 1380, 1383-84.

It is not clear what evidence was presented to the trial court to establish the date of defendant's release from confinement so as to make the conviction admissible. (See *People v. Yost* (1980), 78 Ill. 2d 292, 297, 399 N.E.2d 1283, 1285.) However, it is clear from the record that defendant was in fact paroled for the voluntary manslaughter conviction on February 8, 1972, and that trial commenced in July 1978, thus bringing the voluntary manslaughter conviction within the 10-year period described in *Montgomery*. (See *People v. Owens* (1978), 58 Ill. App. 3d 37, 39.) Accordingly, we find that defendant's prior conviction was admissible for impeachment purposes and that the trial court did not err in admitting it.

### IV.

Defendant also contends that the State's failure to comply with Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(ii)) denied him a fair trial. He points to the State's failure to disclose two of his statements, one made to Officer Tyler who was listed as a witness and another made to an assistant state's attorney who was not listed as a witness, as establishing the discovery violation.

Defendant's motion for pretrial discovery requested a list of all witnesses present at the time of any of his written or oral statements and the substance of those statements. The State's answer to discovery stated that there were no oral or written statements made by defendant. On the

day before trial the State admitted that it had made a mistake and stated that the police report, of which the defense had a copy, contained a statement made by defendant at the time of his arrest. In addition, the State revealed that it had a summary made by an assistant state's attorney of the same statement that was included in the police report. Defense counsel made a motion to suppress this statement which was to be heard with the trial.

During Officer Tyler's cross-examination, he related the threat made by defendant which he did not include in his police report and which was not revealed in the State's answer to defendant's pretrial discovery motion.

■■ Defendant contends that the State's failure to disclose his statements denied him a fair trial. The purpose of Rule 412 is to afford defendant protection against surprise, unfairness and inadequate preparation. (*People v. Kradenych* (1980), 83 Ill. App. 3d 547, 554, 404 N.E.2d 488, 494; *People v. Boucher* (1978), 62 Ill. App. 3d 436, 439, 379 N.E.2d 339, 342.) Noncompliance with the rule is excused only if the prosecutor was unaware of the existence of the statement prior to trial and could not have become aware of it in the exercise of due diligence. *Boucher.*

■■ Although defendant's statements upon arrest and to the assistant state's attorney were revealed as soon as the State realized its mistake, disclosure the day before trial can be considered as demonstrating a lack of diligence. (See *People v. Young* (1978), 59 Ill. App. 3d 254, 257, 375 N.E.2d 442, 444; *People v. Shegog* (1976), 37 Ill. App. 3d 615, 617-18, 346 N.E.2d 208, 211.) However, the arrest statement (which was the same in nature as the one made to the assistant state's attorney) was contained in the police report which defendant had received in discovery and was specifically brought to defendant's attention on the day before trial. Defendant could have requested additional time to interview the witnesses and his failure to do so negates his claim of surprise or unfairness. (*People v. Kradenych*; see *People v. Watkins* (1975), 34 Ill. App. 3d 369, 373, 340 N.E.2d 92, 96.) We therefore find that the late disclosure of defendant's statements did not deny him a fair trial.

Defendant's threat to the arresting officer was not brought to light until the officer testified on re-direct. The State's failure to discover this statement also reflects a lack of due diligence in its preparation of the witness and constituted a violation of Rule 412(a)(ii). (See *People v. Shegog* (1976), 37 Ill. App. 3d 615, 617-18, 346 N.E.2d 208, 211.) However, noncompliance with discovery requirements does not require reversal absent a showing of prejudice. *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203, 211.) Officer Tyler was listed as a potential witness in the State's answer to discovery and the defense had a sufficient opportunity to interview him prior to trial. (See *Greer.*) The undisclosed statement did

not contradict defendant's trial testimony nor was it essential to support defendant's conviction. Contrary to defendant's claim that the evidence of his guilt was not overwhelming, a review of Mr. and Mrs. Coley's testimony leaves no reasonable doubt that defendant was guilty of aggravated battery. We believe that any claim of prejudice caused by the State's failure to comply with Rule 412 in the instant case is "too nebulous to justify a new trial." *Greer*, at 120.

## V.

Defendant also contends that cross-examination regarding his use of heroin violated Supreme Court Rule 402(f) (Ill. Rev. Stat. 1977, ch. 110A, par. 402(f)) since the admissions were made to a probation officer who interviewed him as part of a pretrial investigation report in contemplation of a plea bargain.

Supreme Court Rule 402(f) provides in pertinent part:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, * * * neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding."

It is clear that plea discussions protected by Rule 402(f) may take place between a defendant and a probation officer. (*People v. Morris* (1979), 79 Ill. App. 3d 318, 331-32, 398 N.E.2d 38, 48; *People v. Hardiman* (1980), 85 Ill. App. 3d 347, 353, 406 N.E.2d 842, 847.) The rule was adopted to protect communications made by a defendant in the bargaining process from being used in a later trial. (*People v. Hill* (1980), 78 Ill. 2d 465, 472, 401 N.E.2d 517, 521; *People v. Morris*.) The term "plea discussions" has been found to encompass "statements made by the defendant with the purpose of obtaining reduction of punishment or other favorable treatment from the State in return for a plea." *Morris*, at 332.

It appears from the record that a presentence investigation was ordered by the court approximately three months prior to trial and that defendant had entered into some plea negotiations, the nature of which is unclear. A section of the report entitled "Mental and Emotional Conditions" included information about defendant's drug use and revealed that he had injected both cocaine and heroin and that he had used heroin from 1973 to the time of the report.

On cross-examination defendant admitted that he had used cocaine but denied using heroin. In order to impeach defendant, the prosecutor had the investigation report marked for identification and asked defendant whether he had used heroin at the time of the crime. When defendant remained steadfast in his denial of heroin use, the prosecutor pursued another line of questioning. The report was not admitted into evidence,

nor was the probation officer called as a witness to perfect the attempted impeachment.

██ The State argues that the admissions did not involve an admission of guilt for the instant offense nor was it given in the course of the plea negotiations, but was merely a prior inconsistent statement and therefore admissible at trial. It is true that the information regarding defendant's drug use was collateral to the issues on trial and did not directly refer to any offer to plead guilty or admit defendant's guilt. However, it is equally apparent that the investigation report was prepared pursuant to court order and was part of the plea negotiation process. While the subject of a precise *quid pro quo* was not discussed by defendant with the probation officer, it is reasonable to assume that the report was a preliminary step for the purpose of disposing of defendant's case without trial. Rule 402(f) seeks to insure that plea discussions be conducted in an atmosphere of candor, free of the risk that statements made during negotiations will be used as evidence of guilt. (*Hill*, at 472; *Morris*, at 332.) To allow statements made by a defendant to a probation officer pursuant to a court-ordered investigation to be used as impeachment evidence at trial would obviously leave a defendant indisposed to speak with the officer even about his background, let alone the crime itself, and defeat the purpose behind Rule 402(f). While we recognize that a distinction and an otherwise independent admission exists (*People v. Friedman* (1980), 79 Ill. 2d 341, 353, 403 N.E.2d 229, 236), we find that the use of defendant's admissions in the instant case infringes on the bounds of Rule 402(f) and that the report should not have been used for impeachment.

The improper use of the probation officer's investigation report does not require reversal of defendant's conviction in the instant case. The report was not admitted into evidence, nor was the probation officer called as a witness to perfect the impeachment. In a bench trial the judge is presumed to have considered only competent evidence in reaching his verdict. (*People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649, 660, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64; *People v. Gilbert* (1977), 68 Ill. 2d 252, 258-59, 369 N.E.2d 849, 852.) The record in the instant case does not affirmatively show that the judge considered the evidence contained in the investigation report in reaching his verdict so as to rebut this presumption. (See *People v. Gilbert*.) We therefore find that the improper use of the report did not contribute to the court's judgment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.