THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT JAMES, Defendant-Appellant.

First District (4th Division)    No. 80-1460

Opinion filed September 24, 1981.

Steven Clark and Edwin R. McCullough, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Georgia A. Buglass and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, Robert James, was convicted of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2), (a)(3)) and attempted armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 8—4). He was sentenced to a term of 50 to 90 years for murder, and 5 to 15 years for attempted armed robbery, sentences to run concurrently.

On appeal, defendant presents the following issues for review: (1) whether the trial court erred by allowing testimony not contained in any discovery material; (2) whether the trial court erred by allowing testimony about other crimes; (3) whether the trial court erred by allowing testimony about defendant's use of narcotics; (4) whether the trial court erred in permitting the prosecution to rehabilitate a witness by eliciting prior consistent statements made by the witness; and (5) whether the defendant was proved guilty beyond a reasonable doubt. We affirm.

The testimony at trial was as follows: Mary Broomfield testified that she is presently residing in the Dwight Correctional Facility for committing murder and attempted armed robbery of Rubin Carter on May 28, 1974. The witness stated that she was in the company of Robert James

and Robert Jones in the Top Hat Lounge at 10:30 a.m. on that date. The three of them went for a ride and then proceeded to the home of Robert James and his wife in the 4900 block of Quincy Street, Chicago. James' wife was out of town. While there, they injected heroin into their arms. They left the apartment around 2 p.m. As they were leaving, they discussed robbing someone in front of a currency exchange. The plan was to go to the currency exchange, wait for someone who had cashed a check to come out, and "take them into the alley and stick them up." They decided to drive to the currency exchange at Roosevelt and Western. There, James and Jones left the car, returning a few minutes later. According to the witness, they then drove to her sister's house at 3400 Maypole, picked up her television set, drove to 14th Street and Ashland, and returned to her sister's house.

Further testifying the witness stated that after leaving her sister's home around 4 p.m., they proceeded to Cook County Hospital with the intention to rob the catering truck driver. They parked on Flournoy Street. James and the witness exited the car, walked over to Wood Street, and walked down the sidewalk nearest the parked catering truck. They walked to the corner, passing the truck in order to "check it out." The driver was standing at the rear of the truck. Broomfield stated she stood approximately 12 feet from the catering truck as James pulled out a gun and told the driver that it was a robbery and to give him the money. The driver shook his head and backed away from James. James followed him up the stairs to the Cook County Children's Hospital. The driver kicked at James; James hit the driver with the gun, the gun discharged, and the man fell to the ground. James ran down the stairs, grabbed the witness by her arm, and they both ran to the car. Thereafter, the witness, James and Jones went to James' apartment on Quincy Street. Jones left 5 minutes later. The witness stated that she and James stayed there overnight. Jones came by the next morning and took the witness home.

On cross-examination, Broomfield stated she has also been known as Tina Harper. She began using drugs in 1965 and stopped in 1974. She indicated that she will lie when it is convenient for her. The witness stated that she was arrested on May 31, 1974. At that time, she told the officers she was a prostitute. They questioned her concerning her activities on May 28, 1974. She did not inform them of the plan to rob someone in front of the currency exchange. She did not reveal any information concerning the murder and attempted robbery that took place on May 28, 1974, until May 9, 1978. She stated that she hoped to receive some consideration for her testimony; the prosecutor said he may help her.

Elijah Jones, Jr., testified that he is a mechanic and was at Cook County Children's Hospital on May 28, 1974, visiting his daughter. He saw the catering truck driver get shot. He went to the catering truck to obtain

a soft drink. A lady asked him for change and he replied that he had no change. He attempted to walk to the back of the truck but the woman prevented him from doing so. He heard feet shuffling at the back of the truck. When he finally reached the back of the truck, he saw a man with a gun. Elijah identified defendant as that man, but stated that he was not certain whether defendant was the man who actually shot the catering truck driver. The witness also identified Mary Broomfield as the woman who asked him for change and who left with defendant after the shooting.

Jimmy Soto testified that Rubin Garcia was his cousin. He saw Rubin on May 28, 1974, alive and working at the Triple A Company around 2 p.m. When he saw Rubin again, on May 28, 1974, he was at the Cook County Hospital emergency unit, dead. The last time he saw Rubin was at the county morgue.

Officer James Cornelison testified that he was assigned to the case and began his investigation on May 31, 1974. On October 7, he went to Memphis, Tennessee, to extradite the defendant. Subsequently, defendant was brought back to this jurisdiction.

Dr. Pascual Culala, a pathologist, testified that he performed an autopsy on Rubin Garcia which indicated the cause of death was from gunshot wounds to the pancreas, stomach, and liver. The People then rested.

Investigator William Wendt was called as a witness on behalf of the defendant. On May 31, 1974, Wendt questioned Broomfield concerning the homicide of Garcia. The officer stated that Broomfield did not tell him she was defendant's girlfriend; she told him she was living with Otis Blitzso. Broomfield informed him after the shooting, she and Robert James got into the car and Jones drove her home to 3334 Maypole; Jones and James then drove away.

On cross-examination, Investigator Wendt stated that Broomfield told him of the events relating to the attempted armed robbery and the murder. On redirect, the officer stated that the first time he talked with Broomfield she denied she had anything to do with the offense. She did not tell him anything about going to her sister's home or planning to rob someone at the currency exchange.

After arguments, the jury deliberated and found defendant guilty as to both counts.

Defendant contends the trial court erred in allowing the prosecutor to question Mary Broomfield concerning oral statements made by defendant pertaining to the plan to rob someone at a currency exchange. Defendant asserts that this was error because (1) these statements were not contained in any discovery material tendered to defense and (2) it revealed evidence of crimes other than the one for which he was being tried.

It is clear that a defendant is entitled to have his guilt or innocence determined solely with reference to the crime for which he is charged. (*People v. Bailey* (1980), 88 Ill. App. 3d 416, 420, 410 N.E.2d 545, 547; *People v. Hartness* (1977), 45 Ill. App. 3d 129, 138, 358 N.E.2d 954, 960.) Evidence which implies that the accused has engaged in other criminal activity is inadmissible where the only value of such evidence is to create an inference that defendant has a propensity to commit crimes (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506, 509; *People v. McTush* (1978), 61 Ill. App. 3d 214, 217, 377 N.E.2d 1148, 1150). The mere fact that certain testimony could be interpreted as inferring that defendant was engaged in other criminal activity does not make the admission of that testimony per se erroneous. *McTush*, at 217; *People v. Guyton* (1972), 53 Ill. 2d 114, 119, 290 N.E.2d 209, 212.

■■ The exception to the rule admits evidence of other offenses if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Evidence of other crimes which shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design may be admitted as independently relevant. (*Lehman*, at 343; *Bailey*, 420.) In deciding whether to admit evidence of another crime the defendant is alleged to have committed, the trial judge must balance the relevancy of the evidence offered against its tendency to inflame or prejudice the jury. (*Bailey*, at 420.) Thus, the issue of admissibility turns on whether, in light of the applicable exception, the trial court abused its discretion in allowing the testimony. *People v. Martin* (1979), 80 Ill. App. 3d 281, 294, 399 N.E.2d 265, 275.

■■ In the case at bar, the trial court ruled that Broomfield's testimony concerning the plan to rob someone at a currency exchange was admissible. The court found that this testimony was probative of a common design and motive. We disagree. The modus operandi is completely dissimilar. Moreover, while defendant knew Broomfield would testify, he was not aware of the statement. Additionally, the defendant was clearly entitled to the substance of this oral statement before trial, but failure to provide it does not in all instances necessitate a new trial. (*People v. Greer* (1980), 79 Ill. 2d 103, 119-20, 402 N.E.2d 203, 211.) Furthermore, noncompliance with discovery requirements does not require reversal absent a showing of prejudice. (*Greer*, at 120; *People v. Ingram* (1980), 91 Ill. App. 3d 1074, 1082, 415 N.E.2d 569, 576.) We do not believe that prejudice has been established because Broomfield's testimony concerning the plan to rob the currency exchange was not essential to support defendant's conviction. *Ingram*, at 1082-83.

Defendant contends the trial court erred in allowing the prosecution

to elicit testimony from Broomfield concerning defendant's use of narcotics, and that this motion for a mistrial should have been granted. According to defendant, the prejudicial error occurred during the direct examination of Broomfield by the prosecutor:

"Q: When you went inside, what did you do, Miss Broomfield?

A: We injected heroin into our arms."

The prosecutor continued questioning the witness concerning her addiction to heroin. There was no objection by the defense attorney until the prosecutor said:

"Q: At that time, among the three of you, who else used heroin?

Mr. Boyd: Objection.

The Court: Objection overruled.

Mr. Boyd: May we go to the side, please?

[The judge granted a side bar, after which he changed his ruling.]

The Court: The objection to the last question was sustained. Pose another question."

At that point, the prosecutor did not inquire further into the use of narcotics.

■■ Evidence of a defendant's use of or addiction to narcotics is inadmissible in a prosecution for an offense that does not involve narcotics. (*People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 716, 377 N.E.2d 1077, 1086; see also *People v. Stadtman* (1974), 59 Ill. 2d 229, 319 N.E.2d 813.) Where error is shown to exist, it will compel reversal unless the record affirmatively shows that the error was not prejudicial. *Stadtman*, at 232.

■■ In the instant case, we believe the record demonstrates that defendant was not prejudiced by the fact that the jury heard Broomfield's testimony that "We injected heroin into our arms." Further, defense counsel's failure to object to that answer waived any objection to this testimony (*People v. Robinson* (1974), 20 Ill. App. 3d 777, 782, 314 N.E.2d 585, 590), and requires us to conclude that this question and answer, standing alone, did not constitute error requiring reversal. (*Cf. People v. Novak* (1965), 63 Ill. App. 2d 433, 439, 211 N.E.2d 554, 560.) The final question presented by the prosecutor relating to heroin addiction was objected to by defense counsel and sustained by the trial court. Moreover, the record shows that the eyewitness testimony of Elijah Jones identified defendant as the man who held a gun to the catering truck driver. Furthermore, we find that Broomfield's testimony did not deprive defendant of a fair trial by prejudicing the jury and tipping the scales against defendant (*People v. Darby* (1978), 58 Ill. App. 3d 294, 298, 374 N.E.2d 229, 232), particularly in view of the overwhelming evidence of defendant's guilt. *Dzambazovic*, at 716.

Defendant contends the trial court erred in permitting the prosecution on the redirect examination of Investigator Wendt to attempt to rehabilitate Broomfield by eliciting her prior consistent statements.

■■ The general rule is that the testimony of a witness cannot be bolstered or supported by showing that the witness has made similar statements out of court in harmony with his testimony on the witness stand. (*People v. Buckley* (1976), 43 Ill. App. 3d 53, 55, 356 N.E.2d 1113, 1114). There are exceptions to the general rule, none of which are applicable in the instant case. While it constitutes error to admit evidence of this nature, we do not regard it as reversible in this case. (*People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191.) The improper testimony was but cumulative and could not under the circumstances have contributed to the verdict of guilty. In light of the evidence presented at trial, we deem the testimony of Investigator Wendt concerning Broomfield's prior consistent statements to constitute harmless error.

Finally, defendant contends he was not proved guilty beyond a reasonable doubt where the only basis for his conviction was the uncorroborated testimony of a convicted co-defendant whose credibility was impeached by her bias against the defendant, her interest in convicting the defendant in order to get her sentence reduced, her propensity to lie when convenient, and her prior inconsistent statements.

It is well settled in Illinois that a reviewing court will not set aside the jury's verdict unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt. (*People v. Thomas* (1979), 72 Ill. App. 3d 28, 33-34, 389 N.E.2d 1316, 1321; *People v. McDonald* (1975), 62 Ill. 2d 448, 456, 343 N.E.2d 489, 493.) The sufficiency of eyewitness identification, the credibility of the witnesses, and the weight to be given their testimony and the inferences to be drawn therefrom are matters within the province of the jury. (*Thomas*, at 34.) Although the testimony, of an accomplice is necessarily received with caution, such testimony, even if uncorroborated, is sufficient to warrant a conviction if it satisfies the trier of fact beyond a reasonable doubt. *Thomas*, at 34; *People v. Walker* (1974), 24 Ill. App. 3d 421, 426, 321 N.E.2d 114, 118.

■■ In the case at bar, the jury properly considered the credibility of the witnesses and weighed any discrepancies in light of all of the evidence. Therefore, considering the testimony of Broomfield and Elijah Jones, in addition to other evidence presented at trial, we find the evidence clearly sufficient to justify the jury's verdict.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.