THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEROY SMITH, Defendant-Appellant.

First District (4th Division)   No. 81—2263

Opinion filed May 19, 1983.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Joseph L. Ponsetto, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Leroy Smith, was convicted of armed robbery (Ill. Rev.

Stat. 1979, ch. 38, par. 18—2), armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2), two counts of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11), and four counts of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4). Defendant was sentenced to concurrent terms of imprisonment of 20 years for home invasion, armed violence, and armed robbery, and seven years for each count of aggravated battery.

Defendant appeals his convictions, arguing that (1) he was convicted improperly of armed robbery and home invasion because the complainant did not tell the police of these offenses on the day of the incident; (2) the trial court erred in permitting the State to introduce in rebuttal an oral statement made by defendant that had not been revealed to defendant pursuant to his pretrial discovery request; (3) the record does not reveal a knowing and intelligent jury waiver; (4) the convictions for four counts of aggravated battery must be vacated because (a) the trial court imposed sentence for only one count of aggravated battery and (b) the same physical act was the basis for the aggravated battery and armed violence convictions; and (5) defendant's sentence for armed violence is improper.

The State concedes that defendant's armed violence conviction should be vacated on the authority of *People v. Haron*-(1981), 85 Ill. 2d 261, 422 N.E.2d 627. We affirm defendant's convictions for aggravated battery, home invasion, and armed robbery and vacate his conviction for armed violence.

FACTS

Defendant was tried on July 20, 1981. At the commencement of the proceedings, defense counsel informed the court that "Mr. Smith is requesting a trial by Court rather than a jury; he will sign a jury waiver." The jury waiver form signed by defendant appears in the record.

Minnie Robertson was the first witness called by the State. She testified that on December 22, 1980, she lived in an apartment in Chicago with Roman Allen. She was at home alone at 8:15 p.m. when defendant, whom she called "Lamont," came to her door. Robertson testified that she was acquainted with defendant, having met him several times at a lounge she went to with her boyfriend. Defendant had never been in her apartment before.

When Robertson opened the door defendant grabbed her by the throat and pushed her back into the apartment. Defendant "snatched" the telephone out of the wall, told her to put her hands up, and asked if she had any money. When Robertson said no, defend-

ant struck her on the head several times with a "bullworker" exercise instrument and an iron pipe. Defendant then struck Robertson in the face, breaking her jaw and displacing nine teeth. Her left hand was broken in several places and the little finger severed. When she fell to the floor defendant continued to strike her with the iron pipe and kicked her several times, leaving his footprint on her back. Robertson testified that defendant threatened to shoot her; she did not see a gun. He told her to answer him but she could not because of her facial injuries. She testified that she saw defendant take her television and stereo and leave.

A Chicago police officer testified that he went to Robertson's apartment on December 22 pursuant to a radio call. He found Robertson in the hall covered with blood. She was taken to the hospital where she was treated for two broken arms, two broken hands, a broken jaw, and a bruised back. More than 100 stitches were needed to close her head wounds, a finger was amputated, and plastic surgery on her left eye was necessary.

Robertson was interviewed by two policemen on the night she was injured. She identified defendant to them as her attacker and said defendant had told her that "he was going to get my mother, my family if I told anyone, and he said he had a gun." Robertson said she did not see the gun. She did not mention to the policemen that any property had been taken.

Defendant testified that on December 22, 1980, he was at home recuperating from a kidney operation. At 5 p.m. his mother answered a telephone call for defendant from Minnie Robertson, whom he had dated previously. He went to Robertson's apartment at 5:30 and talked with her until 6:30. They both drank wine and became intoxicated. Defendant testified that he began to feel sick and that he did not want Robertson's boyfriend to find him in her apartment, so he tried to leave. Defendant and Robertson began to fight over defendant's jacket and slapped each other. Defendant stated that Robertson tried to grab him, he pushed her, and she lost her balance and fell through a glass table. She got up and grabbed the door to prevent him from leaving. He shut the door forcefully, catching her fingers. When he pushed the door off her fingers it hit her in the face. Robertson refused defendant's help and defendant left.

Defendant denied hitting Robertson with any object and denied taking anything from her apartment. Defendant's mother and brother corroborated defendant's testimony that Robertson had called him. They both testified that defendant was not carrying any goods when he came home. Defendant was arrested at his home on December 28,

1980.

After the defense rested, the State called Chicago police officer Robert Smitka as a rebuttal witness. Defendant's objection to the officer's being called was overruled; the witness was directed by the court to "confine your testimony solely to rebuttal." Officer Smitka testified that defendant told police on the day he was arrested, "I don't know what you are talking about. I wasn't there." Officer Smitka said during cross-examination by defense counsel that he had included this statement in his police report of the incident, but two or three pages of the report had been lost. The following exchange then took place:

> "[Defense counsel]: We are at a disadvantage here. Apparently there are other pages of the report and we haven't got it.
> The Court: Were you aware there were some pages lost?
> [The State]: We don't have them.
> The Court: Were you aware?
> [The State]: Not until today.
> [Defense counsel]: We were taken by surprise by his testimony.
> The Court: Can you cross-examine any more?
> [Defense counsel]: No.
> The Court: I will allow latitude to explore."

Cross- and redirect examination of the witness were then completed.

A certified record of defendant's earlier conviction for armed robbery was admitted into evidence. The court found defendant guilty beyond a reasonable doubt of all the charges, regardless of whether there had been any relationship between defendant and Robertson, because he found defendant's explanation that Robertson had hurt herself accidentally to be unworthy of belief. Defendant was sentenced as outlined above.

OPINION

I

Defendant's first argument on appeal is that his convictions for home invasion and armed robbery must be reversed because Robertson did not tell the police on the day she was injured that defendant was an intruder or that he had robbed her, and this court should therefore infer that Robertson's testimony "was concocted by her to prevent domestic difficulties with her new boyfriend." Defendant cites *People v. Carter* (1974), 19 Ill. App. 3d 21, 311 N.E.2d 213, in support of this claim. In *Carter*, the defendant's murder conviction was re-

versed because the two eyewitnesses had given testimony that differed from their trial testimony, not only to the police when they reported the murder, but also at a coroner's inquest and again before a grand jury. Furthermore, Carter's codefendant was found not guilty on the same evidence. Finally, the trial testimony in question was not merely, as here, more detailed and inclusive than the witnesses' first account of the crime to the police; at trial the witnesses in *Carter* directly contradicted the story they had told not once, but three times, before the trial. Under these circumstances the reviewing court found that "[t]he entire testimony of the [witnesses] was so replete with contradictions and inconsistencies that a conviction based upon such testimony cannot stand." 19 Ill. App. 3d 21, 23, 311 N.E.2d 213, 215.

A decision based on a situation so entirely different from the facts in the case at bar cannot be read to require a reversal of defendant's convictions for home invasion and armed robbery. Robertson gave a more detailed account of the attack at trial than she gave to the policemen who interviewed her at the hospital after she received treatment for the severe injuries described above. It certainly does not strain credulity to assume, as the trial judge evidently did, that Robertson was suffering too much stress to give a completely detailed description of the attack at that time. We also find it significant in this regard that Robertson testified defendant had told her "he was going to get my mother, my family if I told anyone, and he said he had a gun." We agree with the State's observation that "[l]ack of concern over a material possession or how an attacker gained entrance after a savage beating is *** understandable."

"A reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.'" (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513, quoting *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634.) "Conflicts or discrepancies in testimony go only to the weight to be given to the testimony [citation], and the trier of fact may believe as much or as little as it pleases of a witness's testimony [citation]." (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 114, 369 N.E.2d 260, 264.) "In a bench trial it is the function of the trial judge to determine the credibility of the witnesses and the weight to be afforded their testimony and to resolve any conflicts in testimony, and a reviewing court should not reverse merely because the evidence is conflicting." (*People v. Glaze* (1977), 48 Ill. App. 3d

523, 533, 362 N.E.2d 1287, 1296.) As we have said, the evidence in this case is more accurately described as more or less detailed or complete than as conflicting. Even if the evidence were actually conflicting, this court would not be justified in reversing the trial judge's determination that Robertson's testimony was worthy of belief and that defendant was proved guilty beyond a reasonable doubt. Established legal principles require us to defer to the trial judge's findings; defendant's claim that we should not do so is unpersuasive.

## II

■■ Defendant's second argument for reversal is that the trial judge erred in permitting the State to use in rebuttal an oral statement made by defendant that had not been revealed to defendant pursuant to his pretrial discovery request. We disagree.

In response to defendant's discovery motion the State answered that defendant had made an oral statement to police on December 22, 1980. Since defendant was arrested on December 28, it appears the date was mistakenly reported, but the record indicates that the State did inform defendant of the existence of the statement, and informed him that its substance was contained in a police report. A copy of the police report was furnished to defendant. The relevant portion of the trial transcript, which is quoted above, indicates that neither the State nor defense counsel was aware until the statement was introduced as rebuttal evidence that the relevant section of the police report had been lost before defendant received a copy.

We think that defendant has waived this issue on appeal by failing to object to the testimony regarding defendant's statement at the time it was elicited. Although defendant claims that objection was made to introduction of the statement, the record indicates that defendant objected only to the State's calling Officer Smitka to testify in rebuttal. When the witness quoted the statement made by defendant, no objection was made. It became apparent for the first time when defense counsel cross-examined the witness that the portion of the police report containing defendant's statement had been lost. Although defense counsel expressed his surprise, he made no objection. The trial judge then offered counsel "latitude to explore" to compensate for the surprise testimony, and counsel asked two more questions before stating that he had no further questions for the witness.

■■■ "[N]oncompliance with discovery requirements does not require reversal absent a showing of prejudice. (*People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355.) Moreover, the trial court has discretion in allowing introduction of testimony not disclosed where there is

no showing of surprise or prejudice; further, a defendant cannot complain when he fails to request a continuance for investigation of the statement and instead proceeds with trial." (*People v. Ferguson* (1981), 102 Ill. App. 3d 702, 713, 429 N.E.2d 1321, 1329.) This court has held that to establish prejudice defendant must show that the disputed testimony was essential to support defendant's conviction. (*People v. James* (1981), 100 Ill. App. 3d 884, 427 N.E.2d 248.) Although defense counsel did express surprise, in this case the surprise was mutual and occurred through no apparent fault of the State; defendant made no showing of prejudice, and neither objected to admission of the statement nor requested time to investigate, but proceeded with trial. Thus it appears to us that defendant has waived his objection.

Assuming, *arguendo*, that this issue has not been waived, we find defendant's argument that the testimony amounted to reversible error unpersuasive. Defendant cites *People v. Thompson* (1974), 18 Ill. App. 3d 613, 310 N.E.2d 504, in support of his claim that admission of the oral statement "severely prejudiced his case *** [and] the error can be corrected only by a new trial." We do not find that *Thompson* mandates reversal in this case, however. The State argues that *Thompson* is distinguishable on its facts from the case at bar in that defendant Thompson had filed a "motion to produce confession" under section 114—10 of the Code of Criminal Procedure of 1963, while defendant in this case filed a simple motion for discovery, and the statement at issue "is certainly not a confession." In view of the Illinois Supreme Court's holding in *People v. Costa* (1967), 38 Ill. 2d 178, 230 N.E.2d 871, that the word confession includes both inculpatory and exculpatory statements, we do not find the State's characterization legally persuasive in spite of its factual accuracy. However, since the *Thompson* decision concerned the application of a statute that is not at issue in this case, we agree that its precedential value in the case at bar is questionable. Furthermore, the reversal in *Thompson* was based on the State's statement in its bill of particulars that the defendant had made no written or oral statement when in fact a statement had been made and the State introduced it into evidence at trial. Because there was "no indication in the record *** that the State's Attorney was unaware of the statement or could not have become aware of it in the exercise of due diligence" (18 Ill. App. 3d 613, 616, 310 N.E.2d 504, 507), reversal was found to be necessary.

The record in the case at bar indicates that the State did inform defendant of the existence of the statement and informed him that the substance of the statement was contained in the police report, of which defendant received a copy. Both defense counsel and the State's

Attorney were unaware that pages of the report were missing until Officer Smitka began to testify. Accordingly, we find the rationale of the *Thompson* decision to be inapplicable in this case.

Nor do we find that *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255, cited by defense counsel in oral argument, mandates reversal. In that case, failure of the State to comply with discovery requirements was found to have prejudiced the defendant and to have been done through the State's neglect, inadvertent or purposeful. The failure to comply was thus held to require reversal. The facts of the case at bar differ substantially from those in *Weaver*, as they do from the facts in *Thompson*, and as the *Weaver* court observed, the judgment of the trial court is given great weight, and each case must be decided on its own facts.

Finally, this was a bench trial, and the "sound presumption [is] that the court in a bench trial relies only on proper evidence in reaching a determination on the merits." (*People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649, 660, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64; see also *People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102.) In the absence of an objection that was overruled, we must presume that the trial judge disregarded any improper evidence. Accordingly, for all the foregoing reasons, we find that the trial judge's decision to admit the testimony regarding defendant's statement was within the proper bounds of his discretion.

## III

■ Defendant's argument that his convictions must be reversed because the record does not reflect a knowing and intelligent jury waiver is completely without merit. As we stated above, a jury waiver signed by defendant appears in the record. Furthermore, defendant was present in court when his counsel informed the trial judge that defendant requested a bench trial, whereupon the trial judge questioned defendant about his understanding of what a jury is and his desire to have a bench trial. The defendant himself told the trial judge that he wished the judge to hear the case without a jury. The record clearly indicates that this was an informed decision by defendant.

Even in the absence of a signed jury waiver, Illinois courts have repeatedly held that when defense counsel has made an express waiver of the right to a trial by jury in the defendant's presence, defendant is deemed to have acquiesced in the waiver and to be bound by it. (See, *e.g., People v. Hoover* (1980), 87 Ill. App. 3d 743, 410 N.E.2d 195; *People v. Williams* (1977), 47 Ill. App. 3d 798, 365 N.E.2d 415, *cert. denied* (1978), 434 U.S. 1070, 55 L. Ed. 2d 772, 98

S. Ct. 1251; *People v. Sheppard* (1974), 20 Ill. App. 3d 1036, 313 N.E.2d 287.) Even if defendant had not signed a waiver form evidencing his desire to have a bench trial, he would be bound by his knowing and intelligent choice of a bench rather than a jury trial.

## IV

■ As stated above, the State concedes that defendant's armed violence conviction should be vacated in light of the holding in *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, that a conviction for armed violence based on the underlying felony of aggravated battery was improper because the presence of a weapon was used to enhance an offense from misdemeanor to felony and also to support a charge of armed violence. *Haron* mandates a vacation of defendant's armed violence conviction because the conviction was based on the crime of aggravated battery. Defendant claims that "since this sentence may have influenced the court's sentencing decisions on the other counts, the entire case must be remanded for resentencing." Defendant offers no support for this conclusory statement, and we find no indication in the record that the armed violence conviction influenced the court's sentencing decision as to the other convictions, therefore we hold that resentencing is unnecessary.

## V

■ The last claim advanced by defendant is that his convictions for four counts of aggravated battery must be vacated because (1) the trial judge sentenced him for only one count and (2) defendant was convicted for armed violence based on the same physical act. We find the first argument to be frivolous because it is supported solely by a minor misstatement by the trial judge at the sentencing hearing in which he referred to aggravated battery (singular) rather than aggravated batteries (plural). Because the entire record with the exception of this single word, including every other mention of the convictions by the trial judge and the mittimus that specifies four counts of aggravated battery, indicates that defendant was convicted of and given concurrent seven-year sentences for four counts of aggravated battery, we find this argument by defendant to be entirely lacking in merit.

■ In support of the second argument, which is that the aggravated battery convictions must be vacated because defendant was also convicted for armed violence and "[i]n Illinois, multiple convictions cannot stand when they are caused from the same physical act," defendant cites *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838,

*cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, and *People v. Johnson* (1981), 101 Ill. App. 3d 1060, 428 N.E.2d 1133. Our reading of these decisions reveals that neither dictates a reversal of defendant's aggravated battery convictions. In the first place, we have vacated the armed violence conviction and defendant therefore is no longer subject to multiple convictions for both armed violence and the underlying felony. Although defendant does not specifically argue that he should have been convicted for only one count of aggravated battery regardless of whether he was also convicted of armed violence, such an argument is implied and we think it appropriate to point out that neither *King* nor *Johnson* requires vacation of any of the four aggravated battery convictions.

In *Johnson*, this court vacated the defendant's armed violence conviction while affirming his convictions for the underlying felonies of murder and attempted murder. The decision is in complete harmony with our decision in the case at bar. Nor does *King*, which is frequently cited for the proposition that multiple convictions cannot stand when they are carved from the same physical act, mandate a reversal of defendant's aggravated battery convictions. *King* affirmed a defendant's convictions for both rape and burglary with intent to rape. The court expressed the standards for determining when multiple convictions and concurrent sentences are permissible as follows:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.

We find *King*'s analysis to be dispositive of the case at bar. Defendant was convicted of the several acts of committing a battery that (1) caused great bodily harm, (2) caused permanent disability, (3) caused permanent disfigurement, and (4) was committed with a deadly weapon. The record amply supports the conclusion that convic-

tion of a separate count of aggravated battery for each of these related acts was appropriate.

For all of the reasons discussed above, we affirm defendant's convictions for aggravated battery, home invasion, and armed robbery, and vacate his conviction for armed violence.

Affirmed in part; vacated in part.

ROMITI, P.J., and JOHNSON, J., concur.