THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAM JONES *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 83—1278, 83—1641 cons.

Opinion filed November 13, 1984.

James J. Doherty, Public Defender, and Dennis M. Doherty, both of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Thomas D. Bilyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, defendants, Sam Jones and Kirk Reynolds, were each convicted of two counts of armed robbery, two counts of armed violence based on armed robbery, three counts of aggravated battery, one count of armed violence based on aggravated battery, and one count of use of a deadly weapon. On appeal, defendants argue (1) the State failed to prove their guilt of armed violence because it failed to establish a knife used by defendant Jones had a blade of at least three inches; (2) defendants were not proved guilty of certain armed offenses because defendant Reynolds was not shown to be armed at the time of the crime; (3) various convictions should be vacated as arising out of the same acts as other crimes for which defendants were convicted; (4) the trial court erred in not suppressing defendants' confessions because the State failed to comply with the material witness rule; (5) defendant Jones was denied his sixth amendment rights to counsel at a lineup conducted after criminal charges were filed against him; (6) there was no probable cause for the arrest of defendant Reynolds; and (7) the lineup identification of defendant Reynolds was suggestive and tainted later in-court identification.

We affirm in part and vacate in part.

Terry Foley testified at 12:05 a.m. on December 23, 1982, she was sitting in a car with John Alsterda at 527 West Brompton. The car was parked between two street lamps. Both doors to the car were opened simultaneously from the outside. The interior lights of the car

turned on. The lighting conditions in the car were excellent. A man, whom the witness identified as defendant Reynolds, leaned into her side of the car and grabbed her shopping bag and purse. His face was within about six inches of the witness. At the same time, the witness noticed another man struggling with Mr. Alsterda. After between 30 and 60 seconds, the two men ran south and east. She noticed Mr. Alsterda was bleeding. She began to drive to the hospital, when she saw a police car at Cornelia and Lake Shore Drive. She told two police officers in the car of the incident, and continued to the hospital.

At the hospital, the witness met with other policemen. She described her assailant as a black male, between 17 and 20 years old, about 5 feet 10 inches and 180 pounds, clean shaven and wearing a green army jacket and blue jeans. At about 3:15 a.m., the witness went to the police station, where she identified various articles taken in the robbery. At about 4:15, she viewed a lineup, where she identified defendant Reynolds.

On cross-examination, the witness denied that defendant Reynolds "looked damp" in a photograph of the lineup. The witness also denied she was told Reynolds was pulled from Lake Michigan.

John Alsterda testified that a man, whom he identified as defendant Jones, opened his car door, leaned into the car and stabbed him in the elbow and hand four times with a knife the witness described as "six to eight inches, like a filet knife." The lighting conditions were very good. Jones then asked the witness for his wallet and the keys to his car. After Jones got the wallet and keys, he fled, running east. At the hospital, the witness described his assailant as a black male about 17 to 20, 6 feet 2 inches, 250 pounds, clean shaven, with a protruding jaw, wearing a dark grey or navy wool overcoat.

The witness remained hospitalized. At about 9 a.m. on December 27, the witness identified defendant Jones in a lineup.

Chicago police officer Thomas Keane testified he interviewed defendant Jones at about 3:15 a.m. on December 23, 1982. The witness advised Jones of his *Miranda* rights. Jones indicated he understood his rights. Thereafter, Jones made a statement confessing to the robbery. Jones stated Alsterda was cut in a struggle for the knife.

Chicago police officer Thomas Sappanos testified he interviewed defendant Reynolds at about 3:15 a.m. on December 23, 1982. He informed Reynolds of his *Miranda* rights, and Reynolds indicated he understood those rights. Thereafter, Reynolds made a statement confessing to the robbery. Reynolds stated he took Ms. Foley's shopping bag and purse. He took the loot to a second floor rear porch, where he emptied the contents of the bag and purse. He and Jones then ran

to the park. They split up. Reynolds then heard voices. He jumped into Lake Michigan to avoid capture. After being in the water for a period of time, Reynolds cried for help.

Assistant State's Attorney Robert Bastone testified he interviewed Sam Jones and Kirk Reynolds separately on the morning of December 23, 1982. The witness informed each defendant of his *Miranda* rights, and each defendant indicated he understood his rights. Neither defendant requested an attorney, and both defendants made statements confessing to the robbery.

The parties stipulated that if Chicago police officers Rodriguez and Riggio testified they would state that at the time of their arrest on December 23, 1982, defendant Jones was a black male, between 17 and 20, 6 feet 2 inches, 250 pounds, clean shaven, and wearing a dark navy overcoat, and that defendant Reynolds was a black male about 17 to 20, 5 feet 10 inches, 180 pounds, and wearing a green army jacket.

■ First, defendants argue that the State failed to prove them guilty of armed violence because it did not establish the knife used by defendant Jones had a blade of at least three inches.

A person is guilty of armed violence if he commits any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2.) Armed with a dangerous weapon includes "knife with a blade of at least three inches in length *** or any other deadly or dangerous weapon or instrument of like character." Ill. Rev. Stat. 1983, ch. 38, par. 33A—1(b).

In *People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327, we rejected the argument that the statutory language requires an explicit showing that the knife had a three-inch blade to sustain a conviction for armed violence. We stated In *Hall*:

> "Thus, while a knife with a three-inch blade is *per se* a dangerous weapon pursuant to section 33A—1, similar instruments fall within the purview of the statute if it is established that they became a dangerous weapon when used in a manner dangerous to the physical well-being of the individual threatened. [Citation.] Moreover, for purposes of sufficiency of the indictment, we do not find that the absence of blade-length specificity resulted in substantial prejudice to defendant's ability to prepare a defense." 117 Ill. App. 3d 788, 802-03.

Defendants argue that *Hall* is inapposite because in the case at bar, defendants were specifically charged with armed violence based on the use of a knife with a blade of at least three inches. However, defendants were also charged with two separate counts of armed vio-

lence based on the use of a dangerous weapon. We conclude from the record before us that any variance between the single charge of armed violence and the proofs thereof did not mislead defendants as to the charges against them nor hamper in their defense. Therefore, any such variance is not fatal. *People v. Zuniga* (1981), 99 Ill. App. 3d 396, 425 N.E.2d 1094.

■ Next, defendants argue they were improperly convicted of armed offenses against Terry Foley because the State never established defendant Reynolds was armed at the time of the offense.

It is clear from the record before us that the robberies here involved were not separate acts done by each defendant independently. Rather, the robberies constituted a single common plan by which the defendants simultaneously robbed the victims while one of the defendants was armed with a dangerous weapon. Although the record does not reveal defendant Reynolds was armed, the fact that defendant Jones was armed may certainly have facilitated the actions of Reynolds. It is logical to infer that had Reynolds been thwarted in his attempt to abscond with Ms. Foley's property, Jones could have assisted his accomplice while Jones was armed. Furthermore, although no weapon was specifically used against Foley, she was certainly within the zone of danger from Jones' attack against Alsterda with a dangerous weapon while he was sitting next to her. Therefore, we conclude defendants were properly convicted of armed offenses against Terry Foley.

■ Next, defendants argue various convictions must be reversed as arising out of the same act as other crimes for which defendants were convicted. The State concedes that the convictions for armed violence based on armed robbery must be vacated. See *People v. Martin* (1984), 121 Ill. App. 3d 196, 459 N.E.2d 279.

However, defendants also contend their convictions for armed violence based on aggravated battery must be vacated. Defendants argue that Alsterda testified he was stabbed three times and that therefore one stabbing has accounted for two convictions for each defendant. However, our reading of the record reveals Alsterda testified he was stabbed four times; three times in the elbow and once in the hand. Therefore, the State has proved four separate acts of aggravated battery which can sustain three counts of aggravated battery and one count of armed violence. See *People v. Smith* (1983), 114 Ill. App. 3d 1007, 1017-18, 449 N.E.2d 912.

■ Next, defendants argue their confessions should have been suppressed because the State violated the material witness rule.

At the hearing to suppress defendants' statements, Chicago police

officers Thomas Keane and Thomas Sappanos interrogated defendants Jones and Reynolds, respectively. They each advised the defendants of their constitutional rights, and each defendant indicated he understood his rights. Neither officer threatened either defendant, promised anything to either defendant, struck either defendant, or saw any other officer threaten or strike either defendant. They also each testified that neither defendant complained to them that they had been struck or threatened by other officers.

Assistant State's Attorney Bastone testified he interviewed defendants individually after they were interrogated by Officers Keane and Sappanos. The witness did not make any threats to either defendant, make any promises to them, nor strike them. He did not see any officer threaten or strike either defendant. Neither defendant complained that they had been beaten by any officers.

Reynolds testified he was pulled out of Lake Michigan by three or four policemen and kicked several times in the side. He was taken to a police station, where he was struck several times in the face, head, and legs. He was taken to the hospital. A nurse gave him some pills and asked the witness whether he wanted to see a doctor. The witness responded "no." He did not tell anyone at the hospital that he had been beaten. The witness did not tell the assistant State's Attorney that he had been beaten by police officers.

Defendant Jones similarly testified he was beaten at the time of his arrest. One police officer put the barrel of his gun in Jones' mouth. The witness was taken to the police station, where he was struck several times by police officers. He did not tell the assistant State's Attorney that he had been beaten.

On rebuttal, five Chicago police officers testified they were present at the scene of defendants' arrest and at the times of their interrogation. None of the officers struck or threatened either defendant, nor did any of the officers see any other officer strike or threaten either defendant.

The entire thrust of defendants' argument is that the State violated the material witness rule because it failed to call the officers who transported Reynolds to the police station and two of the officers who were at the scene of the arrest.

In *People v. Monroe* (1981), 95 Ill. App. 3d 807, 814, 420 N.E.2d 544, we discussed the application of the material witness rule:

> "We have noted that the rule at issue is a practical one, intended to aid the trial court in its determination of voluntariness. Here we find the absence of the witnesses at issue did not impede the trial court's determination of the voluntariness

of defendant's confession and did not impair the defendant in the presentation of the voluntariness issue he chose to raise. Accordingly, we find no basis for overturning the trial court's decision denying defendant's motion to suppress his confession."

In the case at bar, the State produced witnesses to the entire time of defendants' custody except the period Reynolds was transported to the police station. Furthermore, Reynolds merely testified he was thrown "violently" into the paddy wagon. Therefore, we conclude defendants have not made a threshold showing that the wagon drivers were material witnesses to any alleged coercion suffered by defendants. Under these circumstances, we conclude the trial court had ample basis to determine the statements in question were voluntarily given.

■ Next, defendant Jones argues he was denied his sixth amendment right to counsel because he was not represented by counsel at the time of his lineup identification, which was conducted after a criminal complaint against Jones had already been filed.

It is as yet unclear whether the right to counsel necessarily attaches upon the filing of a criminal complaint. (*People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261.) Nevertheless, as in *Owens*, we find it unnecessary to address that issue because the trial court had ample proof to find Jones waived any right to counsel. See *People v. Owens* (1984), 102 Ill. 2d 88, 102-03.

■ Next, defendant Reynolds argues there was not probable cause to effect his arrest.

The record reveals Reynolds exactly matched the description Terry Foley gave the police, including complexion, height, weight, and clothing. Furthermore, Reynolds was arrested within an hour of the crime, about four blocks away. Under the totality of the circumstances, we conclude the police had probable cause to effect Reynold's arrest. See *People v. Pendleton* (1982), 104 Ill. App. 3d 1104, 433 N.E.2d 1076.

■ Finally, defendant Reynolds argues the lineup identification was unduly suggestive because he was wearing wet clothing.

Complainant Terry Foley testified she was not aware that Reynolds was pulled from Lake Michigan upon his arrest. She also testified she did not notice that Reynolds was wearing wet clothing at the time of the lineup. Therefore, we do not believe the lineup was unduly suggestive. In any event, any suggestiveness in the lineup was harmless. Ms. Foley testified she observed Reynolds for up to a full minute in excellent lighting conditions in extremely close proximity. There-

fore, there was an independent basis for her in-court identification of Reynolds. See *People v. Hernandez* (1984), 121 Ill. App. 3d 449, 459 N.E.2d 1013.

We deny the State's motion for costs in defending the instant appeal.

For the foregoing reasons, defendants' convictions and sentences for armed violence based on armed robbery are vacated, and defendants' other convictions and sentences are affirmed.

Judgments affirmed in part, vacated in part.

CAMPBELL and O'CONNOR, JJ., concur.